IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CR-98-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| LEANDER SHERROD HANDS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the court on defendant's motion to suppress. (DE # 56.) The government filed a response in opposition, and the matter was referred to United States Magistrate Judge James E. Gates for evidentiary hearing and issuance of a memorandum and recommendation ("M&R"), pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge held hearing on November 21, 2011, and entered the M&R on June 12, 2012, recommending that defendant's motion to suppress be denied. Defendant objected to the recommendation, and the government did not respond. Accordingly, the issues raised are ripe for adjudication. For the reasons that follow, the court adopts the M&R in full and denies defendant's motion to suppress.

**STATEMENT OF THE CASE**

On August 10, 2011, defendant was charged in a multi-defendant indictment with the following offenses arising out of a drug transaction culminating on February 15, 2011: (1) conspiracy to possess with the intent to distribute a quantity of heroin, in violation of 21 U.S.C. § 846; (2) distribution of a quantity of heroin, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) possession with intent to distribute a quantity of heroin and a quantity of cocaine base, and aiding and abetting the same, in violation of 21 U.S.C. §

841(a)(1) and 18 U.S.C. § 2; (4) possession of firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and (5) possession of firearms by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924.

On October 6, 2011, defendant filed the instant motion to suppress. (DE # 56.) Defendant seeks suppression of all evidence taken by police during and derivative from a traffic stop of defendant on February 15, 2011, including the associated searches of his person, the vehicle he was driving, and a residence. On October 21, 2011, the government filed an opposition to defendant's motion to suppress, claiming that the evidence in question, which included narcotics and a firearm, was properly obtained and should not be suppressed. (DE # 62.) The magistrate judge conducted a hearing on the motion on November 21, 2011. (DE # 78.) The hearing included testimony for the government from Detectives Patrick Sellers ("Sellers"), Anthony Bacon ("Bacon") and Jonathan Hart ("Hart"), as well as a video of the inside of the CI's vehicle during the February 15, 2011, drug transaction. The defense called the investigator Charles Livingston to testify. Both sides made use of various photographs and maps in order to illustrate testimony explaining the circumstances of the events on February 15. Thereafter, the magistrate judge issued the M&R, finding that the police had reasonable suspicion under the totality of the circumstances to support the stop of defendant's vehicle. (DE # 104.) The magistrate judge therefore recommends denying defendant's motion to suppress.

On July 13, 2012, defendant filed objections to the M&R, listing several factual and legal challenges set forth in more detail below. (DE # 110.) The government has not responded to defendant's objections, and the time for doing so has expired.

## STATEMENT OF FACTS

Upon *de novo* review of the record in this case, the court finds the following facts relevant to disposing of defendant's objections to the M&R. In January and February 2011, detectives in the vice and narcotics unit of the New Hanover County Sheriff's Office conducted three controlled buys of heroin through a confidential informant ("CI"). The CI had assisted law enforcement on over twenty (20) prior occasions, was familiar with the distribution of controlled substances, including heroin, in the area, and previously had provided accurate information to law enforcement. (Suppression Hr'g Tr. 9-11, Nov. 21, 2011.) The third controlled buy, on February 15, 2011, led to the stop of defendant and the evidence which defendant now seeks to suppress.

All three controlled buys were conducted under similar circumstances. In each, the CI arranged to purchase a bundle of heroin from Juan Grady (a user and distributor of heroin) by phone. (Hr'g Tr. 12-14, 33-36, 43-45.) Then, he agreed to pick up Grady in the CI's car and drive to the Taylor Homes area (a housing complex on the north side of Wilmington). (Id. 20-21, 37-87, 45, 51.) Then, the CI would wait for Grady to exit the car and obtain the heroin, and report any details about the source of the heroin to Sellers. (E.g., id. 57-59.) Finally, Grady would return to the CI's car, deliver the heroin, and ride out of the area. (E.g., id. 40-41, 58-59.)

Detective Sellers ("Sellers") arranged for surveillance of the area around Taylor Homes before and during each buy in order to determine who else might be involved in the transactions. (E.g., id. 15-16.) All of the officers involved communicated by mobile radio on an encrypted channel. (E.g., Hr'g Tr. 38.) The Taylor Homes area is known to be an area where drug trafficking often occurs. (Id. 27-28.) One indicia of drug dealing that officers were aware of is the use of a rental car, often taken out in another person's name, in order to obscure the driver's identity. (Id.

38, 95-97.) A rental car was used in both the February 4 and February 15, 2011, transactions. (Id. 38, 105, 109-110). During pre-buy surveillance Bacon determined that a Chrysler on February 4, and an Impala on February 15, were rented by running their plates. (Id.) Bacon also noted that the Impala was in the same place in the Taylor Homes parking lot that the Chrysler had occupied before. (Hr'g Tr. 109-10.)

On February 15, 2011, the CI picked up Grady, just like in the prior buys, and drove him to 6th Street and Brunswick Street for the buy. (Id. 50.) Sellers was following the CI's vehicle, and updating all the surveillance officers on their location. (E.g., id. 61-62.) As the CI and Grady headed for the buy, Bacon saw a black male leave the parking lot of Taylor Homes in the Impala. (Id. 112-13.) A black male had also been seen with Grady on the February 4, 2011, buy. (Id.) The Impala drove south on 5th Street towards Brunswick, and made a left turn, disappearing from Bacon's sight. (Hr'g Tr. 113.)

The court adopts as its own the following description of the subsequent events of the February 15, 2011, buy as set forth by the magistrate judge:

> As instructed by Grady, the C.I. drove to the area of 6th and Brunswick and parked. (Video 16:50:35 to 16:53:10). The C.I. gave Grady the $140.00, and Grady exited the vehicle. (Video 16:53:10-17; Tr. 54:8-19). The C.I. moved his car short distance after that. (Video 116:53:24-43). The C.I. then called Sellers and told him that he was at 6th Street and Brunswick Street, identified a brown Ford Taurus ("Taurus") as the car with the heroin in it, and suggested that the officers move against this car, which was parked. (Video 16:53:30-51; Tr. 57:4 to 58:21; Gov't Ex. A at 2). The C.I. further stated that Grady was currently in the front seat of the Taurus with a white female. (Video 16:53:30-51; Tr. 57:4 to 58:21; Gov't Ex. A at 2). Approximately one minute later, apparently having observed one of the officers participating in the operation make a turn in the direction opposite to that where the Taurus was parked, the C.I. called Sellers again so that the officer could be redirected to the location of the Taurus. (Video 16:54:49 to 16:55:14).
>
> Less than one minute after the C.I.'s second call to Sellers, Grady returned to the C.I.'s car and provided the C.I. with the heroin and $10.00 in change. (Video

16:55:29 to 16:55:45). As Grady entered the car, he said to the C.I., "I had to get it from my cousin, man." (Video 16:55:26 to 16:55:31). The C.I. responded, "Oh, okay." (Id.). Grady then directed the C.I. to take him back to Rankin Street (Video 16:55:44), and the C.I. dropped him off approximately two and a half minutes later. (Video 16:58:00).

After the C.I. had dropped Grady off, approximately three minutes following Grady's delivery of the heroin to the C.I., he called Sellers back and told him that the heroin was in a Chevrolet Impala he described once as brown and once as tan. (Video 16:58:29-53; Tr. 16:58:25 to 16:59:06; Gov't Ex. A at 2). When Sellers asked the C.I. about the Taurus identified in the earlier call, the C.I. clarified that the woman in the Taurus had "copped" from Grady, meaning that she had purchased drugs from Grady. (Video 16:58:53 to 16:59:01; Tr. 59:4-17). The C.I. also informed Sellers that he was headed back to the area of the transaction, around the intersection of 6th and Brunswick Streets, and saw that the Impala was at 5th and Brunswick Streets. (Video 16:58:42-47). He indicated to Sellers that he knew the identity of the driver of the Impala, and although the C.I. could not recall his name, he told Sellers that the driver had"just got out," clearly signifying that he had just been released from prison. (Video 16:59:05-15; Tr. 62:1-8; Gov't Ex. A at 2).

At some point after hearing that the delivery to the C.I. had occurred, Bacon communicated over the radio that he had seen the Impala leaving Taylor Homes and driving in the direction of the buy location just prior to the time that the transaction took place. (Tr. 113:25 to 114:8). After hearing further radio discussion about an Impala among the other officers, Bacon communicated the license plate number of the Impala he had observed. (Tr. 114:9-15).

Sellers advised the other officers in the area to locate the Impala and conduct a traffic stop. (Tr. 61:1-4; 62:14-16). After he had returned to the area of the purchase, the C.I. called Sellers again to inform him that the Impala was driving down 6th Street, that he was currently about two blocks ahead of the Impala, and that the Impala was in front of one of the officers. (Video 16:59:37 to 17:00:23; Tr. 60:16 to 61:13). The C.I. called Sellers back approximately one minute later to tell Sellers that the driver of the Impala was known to carry a gun. (Video 17:01:27-41; Tr. 62:9-13).

Based on the information communicated by Sellers, Hart located the Impala traveling south on 6th Street near the intersection of Red Cross Street, which is approximately three blocks south of Brunswick Street. (Tr. 131:1-15). Hart was able to move closer to the Impala at 6th and Princess Streets and confirm that the license plate matched the one provided by Bacon. (Tr. 133:5-22; Gov't Ex. C at 1). After following it for a few blocks, Hart conducted a traffic stop of the Impala at Princess Street and 11th Street. (Tr. 134:18-22; Gov't Ex. C at 1). Hart identified defendant as the driver. (Tr. 134:25 to 135:3). A subsequent consent search of the vehicle revealed a bag of crack cocaine, which resulted in defendant's arrest. (Gov't Ex. C at 2). During an

> additional search of defendant after his arrest, another officer found several bags of heroin and crack cocaine inside the front of his pants under his belt. (Id.).

## DISCUSSION

A. Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review of those portions to which a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B. Analysis

1. Legal Background

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. In Terry, the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a "brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is underfoot." Illinois v. Wardlaw, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Whether reasonable suspicion exists to justify the stop depends on the "totality of the circumstances, including information known to the officers and any reasonable inferences to be drawn at the time of the stop." United States v.

Williams, 450 F. App'x. 245, 246 (4th Cir. 2011) (unpublished); United States v. Washington, 457 F. App'x. 346, 347 (4th Cir. 2011) (citing United States v. Sokolow, 490 U.S. 1, 8 (1989)). The Fourth Amendment requires the suppression of evidence that is the fruit of an unlawful stop (meaning one that is not supported by reasonable suspicion). Wong Sun v. United States, 371 U.S. 471, 484 (1963).

Reasonable suspicion is an objective test. The court considers the facts as they were known to the officer, not the officer's subjective beliefs. United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004). Reasonable suspicion must exist at the time of the stop, not after the fact. Sokolow, 490 U.S. at 13; United States v. Haines, 42 F. App'x 554, 557 (4th Cir. 2002). The determination of reasonable suspicion must credit the professional experience of the police officers who observe criminal activity on a regular basis. Haines, 42 F. App'x at 557 (citing United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993)).

If an officer acts using the information and instruction supplied by another officer, the collective knowledge doctrine provides that, "the act is justified if the instructing officer had sufficient information to justify taking such action herself." United States v. Massenburg, 654 F.3d 480, 492 (4th Cir. 2011). The knowledge of the instructing officer is thereby substituted for the knowledge of the acting officer. Id. at 493. Furthermore, "'when a group of agents in close communication with one another determines that it is proper to arrest an individual, the knowledge of the group that made the decision may be considered in determining probable cause, not just the knowledge of the individual officer who physically effected the arrest.'" Id. at 492-93 (quoting United States v. Laughman, 618 F.2d 1067, 1073 n.3 (4th Cir. 1980)).

Additionally, when an informant supplies some basis for the officer's reasonable suspicion,

the court, "must ensure that the tip possesses sufficient indicia of reliability." United States v. Perkins, 363 F.3d 317, 323 (4th Cir. 2004) (citing Florida v. J.L., 529 U.S. 266, 270 (2000)). "Where a tip is anonymous, it must be accompanied by some corroborative elements that establish the tip's reliability." Id. However, "[i]nformation of criminal activity given by a known reliable informant is enough to sustain a *Terry* stop." United States v. Harris, 39 F.3d 1262, 1269 (4th Cir. 1994). A tip that comes from a known informant does not have to be verified or corroborated to supply reasonable suspicion for an officer to conduct a vehicle stop. United States v. Singh, 363 F.3d 347, 355 (4th Cir. 2004) (citing United States v. Spotts, 275 F.3d 714, 720 (8th Cir. 2002)).

2. Application

In this case, defendant was stopped during the course of a monitored and controlled narcotics buy as a suspected supplier of heroin. Officer Hart stopped defendant by signaling him to pull over the Impala. (Hr'g Tr. 134.) Accordingly, there is no question that this traffic stop is a seizure within the meaning of the Fourth Amendment, and that Hart must have reasonable suspicion at the time of the stop, based on the totality of the circumstances, to justify the traffic stop. See Williams, 450 F. App'x. at 246. Defendant argues that because the officer did not have enough knowledge to form reasonable suspicion for the stop, the evidence obtained subsequently must be suppressed. (Def.'s Mot. to Suppress 1, Oct. 6, 2011.) The government counters that the stop was supported by reasonable suspicion, and the evidence discovered thus properly was seized. (Opp'n to Def.'s Mot. to Suppress 5, Oct. 21, 2011.) For the following reasons, this court adopts the finding of the magistrate judge that the government's position is correct.

In this case, the totality of the circumstances demonstrate that Officer Hart had reasonable suspicion to justify the stop. Leading up to the stop, Hart was in radio communication with the other

officers surveying the area, including Sellers and Bacon. Officer Sellers communicated to Hart while following and speaking with the CI via cell phone. (E.g. Hr'g Tr. 130-34.) Officer Bacon communicated to Hart that a rental car parked in Taylor Homes earlier that day matched the description of the Impala that the CI claimed was supplying the heroin. (Id. 112-13.) Bacon also communicated via the radio that the Impala left the Taylor Homes area in the general direction of the buy before it took place. (Id. 113.) Hart had the license plate number of the car from Bacon, who had observed the Impala parked in the same place as a rental car used in a previous controlled buy. (Id. 109-10.) Hart knew that the pattern of this controlled buy matched the pattern of the last two buys, done in the past few weeks. (Id. 123-24.) Hart also knew that the CI was reliable because he had always provided accurate information and had been used repeatedly for narcotics investigations. (Hr'g Tr. 124–26.) The CI recognized the defendant, who was driving the Impala, as someone who had recently been released from prison and knew that the defendant was reputed to carry a gun. (Id. 62.) The CI also told Sellers, who informed Hart, the location, direction headed, and color of the Impala, which allowed Hart to find the vehicle easily. (Id.)

In light of all these circumstances, which included reliance on a known and trustworthy informant and fellow officers with extensive experience in narcotics buys, Hart had enough information to form a reasonable suspicion at the time of the stop that defendant was involved in criminal activity. See Singh, 363 F.3d at 355. Detective Hart properly relied upon information and instructions supplied by other officers. See Massenburg, 654 F.3d at 492-93. Hart also properly relied upon information supplied by the known confidential informant. See Harris, 39 F.3d at 1269. Further, the CI's information both bolstered his credibility, because it was all subsequently validated, and provided additional bases for Hart's reasonable suspicion that the defendant was involved in

criminal activity. See Singh, 363 F.3d at 355. Accordingly, where the traffic stop was supported by reasonable suspicion, defendant's motion to suppress on the basis of an unlawful stop must be denied.

C. Defendant's Objections (DE # 110)

1. Factual Objections

Defendant's first three objections challenge the magistrate judge's findings regarding Detective Bacon's ability to observe the Impala and the defendant on February 15 and to compare the vehicle and its driver to ones observed on February 4, 2011. Specifically, defendant objects to the magistrate judge's findings that: (1) Bacon observed a gold Impala parked in the same parking space that the Chrysler had occupied on February 4, 2011; (2) Bacon observed on February 15, 2011 a black male with the same height, build, and race of the man he had seen with Juan Grady ("Grady") on February 4, 2011; and (3) Bacon observed the Impala make a left turn off of Fifth Street approximately three or four blocks from the parking lot at Taylor Homes. (Objections to Mem. & Recommendation 2-4, July 13, 2012.) Upon *de novo* review, the court has considered these objections as well as the evidence in the record, and finds that it agrees with the factual findings of the magistrate judge. In particular, the court finds support in the record for the magistrate judge's conclusion that Bacon was able to see the Impala and the defendant on February 15, and the Chrysler and a black male of similar height weight and build on February 4, sufficiently for comparison. (Hr'g Tr. 112.) Accordingly, the court adopts the findings of the magistrate judge with respect to Detective Bacon's ability to observe and compare vehicles and drivers.

Defendant's fourth objection addresses the conclusions reached by the magistrate judge regarding the circumstances immediately preceding the buy. (Objections to M&R 5.) In particular,

defendant argues that the woman in the Taurus, who met with Grady before the driver of the Impala, could not have interacted with Grady in the way the court found. (Id.) The particulars of this interaction are not necessary to find reasonable suspicion in this case. Nonetheless, upon *de novo* review of the record and the exhibits presented and marked upon by the witnesses at the evidentiary hearing, the court adopts the findings of the magistrate judge as to the circumstances before the buy. (E.g., Hr'g Tr. 57-59.)

Several additional objections address the magistrate judge's findings regarding what the informant and detective Bacon observed and communicated to the officers before defendant was stopped in the Impala. (Objections to M&R 6-8, 19.) Specifically, defendant objects to the magistrate judge's determinations: (1) that the informant saw an Impala after the drug transaction at Fifth and Brunswick Streets; (2) that when the informant says that the driver of the car "just got out" this signifies that driver had recently been released from prison; (3) with respect to Bacon's communications with other officers about the Impala; and (4) with respect to the fact that the Impala stopped by Hart was the same Impala Bacon observed in the parking lot at Taylor Homes. (Id.) These findings are supported by the record. (E.g., Hr'g Tr.109-13, 123-26, 130-34.) Upon *de novo* review of the suppression hearing transcript, and the exhibits offered by defendant and the government at the suppression hearing, the court agrees with the conclusions reached by the magistrate judge.

Some of defendant's objections are based on the magistrate judge's finding of a witnesses's credibility. Specifically, the magistrate judge found that the conflicting evidence from Sellers regarding the details and location of the drug transaction on February 15, 2011, does not negatively impact Sellers' credibility. Defendant argues that the contradictions between the officers' reports and

their testimony not only reflects on their credibility generally, but also shows the officers' inclination to manipulate and change the facts as needed to support their desired conclusion. (Objections to M&R 8-11, 19-23.) "[I]t is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress." United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008). In this case, the officers' testimony was supported by evidence in the record. Any small discrepancies between the reports and the officers' testimony did not undermine the key circumstances that gave Hart reasonable suspicion to stop the Impala defendant was driving. The court agrees with the magistrate judge's findings of witness credibility, as such findings are supported by the record. (E.g., Hr'g Tr. 76-83.)

Finally, defendant contends that the February 15, 2011, controlled heroin buy did not conform to the pattern of the other two buys, and so it cannot be proven that the heroin came from Taylor Homes. (Objections to M&R 12-13.) While the third buy was a few blocks away from the first two buys, that fact is not enough to discount the other findings of the magistrate judge listing several factual consistencies present in all of the buys. (E.g., Hr'g Tr. 12-14, 33-36, 43-45.) Furthermore, a few blocks from Taylor Homes, is still within the area of the first two buys. There was sufficient information in the record to form a pattern that officers could rely upon. Upon *de novo* review of the record and the exhibits presented and marked upon by the witnesses at the evidentiary hearing, the court adopts the findings of the magistrate judge as to the pattern of the narcotics buys.

2. Legal Objections

Defendant raises two objections addressing whether there was a reasonable suspicion to support the stop of defendant's car. First, defendant argues that the officers surveillance was not sufficient to show that defendant was involved in the drug transaction. (Objections to M&R 13-15.)

Second, defendant argues that the information from the informant was not sufficient and the informant was not reliable enough to support probable cause. (Id. at 15-19.) As noted above, the court relies on the totality of the circumstances to determine reasonable suspicion. Williams, 450 F. App'x. at 246. In this case, as detailed above, Hart had the benefit of both his fellow officers' surveillance and a known informant. Taking all of the facts together, as found by the magistrate judge, there were objectively reasonable grounds for Hart's suspicion and the resulting stop of defendant. See Singh, 363 F.3d at 355 (claiming that a tip from a known informant alone is sufficient to provide an officer with reasonable suspicion); Haines, 42 F. App'x at 557 (advising that the court take an officer's experience on the streets into account under the totality of the circumstances test for reasonable suspicion); Massenburg, 654 F.3d at 492-93 (providing that an officer may rely on the knowledge of his fellow officers for information that leads to his/her reasonable suspicion). Accordingly, after *de novo* review of defendant's legal objections, the court adopts the recommendations of the magistrate judge with respect to these objections and agrees with its conclusions.

**CONCLUSION**

Upon a careful review of the M&R, the court discerns no clear error in the magistrate judge's factual findings or legal analysis, and accordingly ADOPTS the recommendation of the magistrate judge (DE # 104) as its own. Defendant's motion to suppress (DE # 56) is DENIED.

SO ORDERED, this the 15th day of October, 2012.

LOUISE W. FLANAGAN
United States District Judge